McBRIDE, Judge.
This is an appeal from a judgment of the district court which awarded Mrs. Maude Murphy Heimberger the sum of $750 as damages for physical injuries, plus expenses, alleged to have been caused by the negligence of the operator of one of defendant’s taxicabs in which plaintiff was riding as a passenger. The accident is alleged to have happened on May 1, 1949.
Late that afternoon, Mrs. Heimberger entered the taxicab at 3507 Frenchmen Street and requested the driver to take her to 1429 Fern Street. After traveling on Frenchmen Street, the cab turned into Sere Street, and it is on this street, between Frenchmen and Touro, that the accident is said to have happened.
The petition alleges in substance that Sere is a dirt street which -had been partially excavated to accommodate the installation of pipes, and that the excavations and the pipes were in full view.
It is then alleged that the taxicab, which was traveling 30 miles an hour, was negligently driven over a pipe in the street, causing plaintiff to bounce from the seat to the ceiling, where she struck her head, after which she was thrown violently back to the seat of the cab, all of which caused severe injuries.
It is alleged further that when she was thrown from her seat plaintiff cried out to the taxicab driver to “slow down” because of the condition of the street, but despite her cries the driver continued on at the same excessive and dangerous rate of speed, and upon reaching a point a few feet •from the next comer the cab was again negligently driven over some pipe, with the result that plaintiff was again bounced to the ceiling of the cab and back onto the seat, causing further injuries.
The only two witnesses to the alleged accident were Mrs. Heimberger and Jones, the cab driver. Jones stated that he turned off Frenchmen Street and that when his cab got into Sere, which had been repaired three or four days previously and was surfaced with oyster shells, the plaintiff complained to him about her back and claimed that he had ran into a hole. Jones denies that there were any holes or pipes in the street, or that there was any violent jolting of the cab. However, he admits he slackened the speed of the cab to 15 miles an hour after plaintiff made the complaint.
In a case such as this, where a recovery is to be predicated largely upon the testimony of the claimant, we believe it is necessary, more so than in usual cases' where there are several witnesses on each side, to carefully sift and analyze the statements of the claimant, and to examine into all circumstances surrounding the case which would in any way aid the court in arriving at a just conclusion.
We have done this, and have arrived at a conclusion different from that reached by our brother 'below. We find several glaring inconsistencies between Mrs. Heim-berger’s testimony and the allegations of her petition, and in the testimony itself, and also in other particulars, all of which readily lead to the conclusion that the accident, if there was one, could not have happened in' the manner related by plaintiff.
Among these circumstances, let us consider the following:
According to Mrs. Heimberger’s statements, there were being erected on Sere Street three houses, and there were pipes in the street which were to service each of the buildings. She estimated that these pipes were 20 to 35 feet apart.
She believed that the first pipe, described as a “big one,” was about 60 feet from Frenchmen Street, and that the cab was driven over this big pipe, which caused her to hit the ceiling, after which she dropped to the floor of the cab, landing on her knees. Her statement is that she then managed to arise from the floor of the cab and regain her seat, after which she said to the driver, “For goodness sake, call your shots; you nearly broke my back.” Mrs. Heimberger states that she could then see the second pipe, and that notwithstanding *230 the warning which she had given the driver, the cab also passed over this second pipe. She is sure that she gave still another warning to the driver, but he continued onward and likewise drove the cab over the third pipe. She told him before hitting the third pipe, “Now, listen, I’m getting mad; don’t go over this one hard.” It was only the bump caused by the first pipe which caused her to be jolted from her seat, and the impact of the second and third bumps were not sufficient to throw her from the seat.
It will be noticed at once that there is a material variance between plaintiff’s allegations and her testimony. The petition alleges that she was twice bounced to the ceiling, and that on each occasion she fell back to the seat, but in her testimony she was emphatic that she was only bounced from the seat once, and then upon hitting the first bump. She claimed that she fell to the floor on her knees.
There is no dispute that the taxicab was moving on Sere Street at about 20 miles an hour. The pipes were intended to be used m servicing the three houses under construction, and were from 25 to 35 feet apart, according to Mrs. Heimberger’s own testimony; yet she would have the court believe that after hitting the first bump, which bounced her to the ceiling and caused her to fall upon the floor of the cab, she was nevertheless able, in her injured condition, to regain her seat and still have time to warn the driver about the second pipe. It must be remembered that an automobile traveling at 20 miles an hour covers 29.2 feet per second, and it would have been impossible for plaintiff, who is a woman 69 years of age, after being thrown about in the cab in the manner described as a result of the vehicle striking the first pipe, to be able to raise herself from the floor, retake her seat, warn the driver, and then observe the second pipe, all within about a second from the moment the cab hit the first bump. It would be taxing judicial credulity to the limit to expect us to accept as true her description of the alleged accident. We could never be made to believe that even a youthful person could have been so agile as Mrs. Heimberger pretends to have been in the fraction of time it took the cab to travel between the first and second bumps.
From the testimony of an employee of the City Engineer’s Office, and also the evidence of defendant’s safety director, we are led to the belief that on May 1, 1949, the date of the accident, no pipes were lying about in the street, nor had the excavations settled to any great degree below the surface of the street so as to present an unusually hazardous condition. A defense witness testified that subsurface drainage had been installed on Sere Street on April 26, 1949, and the excavations were filled with shells. The safety director testified that after he heard of the accident on May 1 he went to the scene and examined Sere Street, finding there only a trench which was “shelled.”
When the taxicab reached Fern and Willow Streets, Mrs. Heimberger alighted therefrom, stating to the driver that she did not want to ride “another revolution of these wheels to save my life. I’ll walk this half block.” We believe it would be contrary to human nature for a person so severely injured as Mrs. Heimberger claims to have been, and suffering from constant pain throughout the ride, to undertake the ordeal of walking a distance of a half block to her destination rather than being driven there in the cab. It also seems odd that Mrs. Heimberger, if she was injured, would have refused the driver’s offer to escort her to her home. It may also be worthy of mention that Mrs. Heimberger gave a tip to the cab driver.
Nor are we satisfied that Mrs. Heimberger suffered any injuries while a passenger in the taxicab. After walking to her home she herself, or someone on her behalf, called the office of the cab company to report the accident, and she then personally summoned her private physician, Dr. H. C. Magee, a general practitioner, who had been treating her for hypertension and arteriosclerosis for about twenty years prior to the date of the accident.
Pursuant to the summons, Dr. Magee called on plaintiff about 7 o’clock p. m., and she complained only of her back. This *231 lappears strange, in view of the fact that [while she claims her head had been bruised and ached, yet she made no mention thereof [to the doctor, nor did she complain of any other injuries. From his superficial examination of the patient, Dr. Magee was of the opinion that she had a sacroiliac sprain, and put her to bed, prescribing a sedative to ease the pain. He saw her about three times at her home, after which she made irregular visits to his office for a considerable period. Dr. Magee's testimony is not convincing to the point that the treatment accorded Mrs. Heimberger was for any injuries received in an accident. It can be gleaned from a careful study of all of his testimony that his treatment of the patient was for her old ailment, the hypertension, with which she had been afflicted for many years. The last examination of Mrs. Heimberger’s back by Dr. Magee was made several months before the trial, and this examination disclosed that the patient showed only subjective sj'mptoms.
Dr. Ane’s X-ray plates, made a year and six months after the alleged accident, showed some narrowing of the two interverte-bral spaces between “the fourth and fifth and at the lumbar sacral junction,” accompanied by hypertrophic changes. Dr. Ane could not state that the condition had been caused by trauma. His testimony makes if certain -that such a condition as the X-ray pictures reflected is to be found in many cases of persons of the age of Mrs. Heim-berger.
There is no necessity to discuss whether the doctrine of res ipsa loquitur is applicable. In this case, unlike Burnett v. Yellow Cab Co. of Shreveport, La.App., 50 So.2d 670, cited by appellee, the plaintiff has not borne the burden of showing that there was an accident in which she received injuries while a passenger in defendant’s cab.
We do not believe plaintiff has made out her case with any degree of certainty. What we said in Owens v. Felder, La.App., 35 So.2d 671, 672, is apropos here:
' “We are reluctant to reverse the finding of a trial court based primarily on questions of fact, but in a case, such as we are presently analyzing, it is a self evident principle that it is occasionally easier to perceive fallacies and inconsistencies contained in the record by a comparison of the various portions of the transcribed record with other pertinent portions than it is to accurately observe and catalogue them while listening to the oral evidence * *
For the reasons assigned, the judgment appealed from is reversed, and plaintiff’s suit is dismissed at her cost.
Reversed.
REGAN, J., takes no part